## Covington County *v.* Fite.

[82 South. 308, Division B. No. 20818.]

1. ANIMALS. *Injury to live stock from dipping. Liability of county. Evidence. Conclusive proof.*

   The legislature in conferring or creating a new right of action against a county, has the power to prescribe the condition upon which the right should be exercised, adjudicated and enforced.

2. SAME.

   In a suit under Acts, Extra Sess. 1917, chapter 38, against a county for injury to cattle resulting from dipping for the eradication of cattle ticks, a higher degree of proof than by a preponderance of the evidence is required, "conclusive proof," as used in section 2 of said act is equivalent to the expression "to a moral certainty" or "beyond a reasonable doubt."

3. SAME.

   "Conclusive evidence" is that which is incontrovertible or that from which only one reasonable conclusion can be drawn taking all the facts and surroundings into consideration.

APPEAL from the circuit court of Covington county.

HON. W. H. HUGHES, Judge.

Suit in justice court by L. J. Fite against Covington county. On appeal to the circuit court there was judgment for plaintiff and the county appeals.

The facts are fully stated in the opinion of the court.

*E. L. Dent,* for appellant.

Chapter 167, Laws of 1916, provides for state-wide tick eradication under rules and regulations of the state live stock sanitary board. While this act was approved April 3, 1916, it was not to take effect until from and after January 1, 1917. Chapter 222, Laws of 1914, provides that the board of supervisors may pay "to the owner of such cattle such loss or damages as he may

suffer because of the death or permanent injury of his cattle hereafter in the process of such dipping, provided any one claim shall not exceed one hundred dollars; and section 2 provides that only fair and reasonable damages could be paid, and the payment and amount was entirely within the judgment and discretion of the board. In the case of *Horton* v. *Lincoln County,* 77 So. 796, where a cow was injured in April, 1917, that there was no absolute liability against the county, and at that time it was within the discretion of the board of supervisors as to whether or not they would pay for such damages, and that was the law when the appellee claimed his cattle were injured in September, 1917. Subsequent to the date on which appellee claims his cattle were injured, viz. October 12, 1917, chapter 38, Extraordinary Session, Laws of 1917, was enacted, making the county liable for "reasonable compensation for any live stock owned by such person that may have been killed or permanently injured since March 1, 1916, or that may hereafter be killed or permanently injured in the process of dipping or as a result of such dipping for the eradication of the cattle tick, where such dipping was done under the supervision of the board of supervisors of the live stock sanitary board." To unbridle the legislature and permit it—for probably sentimental or political reasons—to enact a law making the tax-payers of an inland county like Covington to pay probably twenty thousand dollars for acts done prior to the passage of the acts, would, in my humble opinion, make the ownership of property uncertain, when taxes are levied to the limit for other public purposes, such as roads, school houses, etc. The first of February of each year fixes the liability on property for taxes and for the tax-payers of 1918 to be required to pay for something that was done from March 1, 1916, to October 2, 1917, would be so manifestly wrong that it occurs to me that it would be inviolation of section 16 of the

Constitution of the state of Mississippi and also section
17 of the Constitution. If the legislature could include
supposed injuries to cattle in the process of dipping
back to March 1, 1916, they would have as much moral
and legal right to include injuries to cattle during the
civil war. The board of supervisors did not contemplate
such lability when they made the tax levy for 1916 and
they did not contemplate such liability when they made
the levy for 1917 and if that retrospective part of the
act is held valid, the tax-payers subsequent to February
1, 1918, will have all this burden to bear. As an ex-
ample one of the biggest tax-payers in the county sold
out and moved out of the state in about July or August,
1917, and it could not be legally or morally right for the
purchaser to be required to pay the taxes for acts done
prior to his purchase and at a time when it was not even
thought of that such a liability could or even would be
imposed by the legislature. All agree that the tick
should be eradicated but there is room for honest men
to differ as to the manner and means whereby they
should be eradicated. When a county has paid out al-
most or quite enough in an effort to eradicate the tick
to purchase at a reasonable price all the cattle in the
county and the tick still here, it is time for the tax-
payers to take bearings as to how the county fund
shall be maintained for the continued prosecution of the
eradication, and at the same time maintain other pub-
lic enterprises or work, such as roads, schools, etc., and
to hold the county liable for the fancied injuries to
cattle in 1916 up to October 12, 1917, would be fetter-
ing the progressive spirit of to-day, and at the same
time encourage the disposition of the few who are
against dipping to present claims against the county.
As it would be an exception to find a man against dip-
ping, the owner of cattle, who would not stenuously con-
tend that his cows were materially affected or perman-

ently injured in the process of dipping after March 1, 1916, and up until October 12, 1917.

The instruction granted the appellee, as appears on the record, page 44, is manifestly error for the reason it says: "And assess his damage such as would compensate him for the injury done the cattle not in excess of the amount sued for to wit one hundred and twenty dollars," whereas chapter 38, Laws of 1917, the instructions should have been reasonable compensation. Without the word "reasonable" preceding the word "compensation" as it is in the act, the jury was not properly instructed as to the measure of damages.

There is no cause of action stated against the county and there is no evidence that the appellee first made proof of the amount of his loss or damages to board of supervisors, and the application of the principles of law as announced by this court on the very question here attempted to be presented precludes an affirmance of this case, the two cases being as follows: *Horton* v. *Lincoln County,* 77 So. 796, and *George County* v. *Bufkin,* 78 So. 781.

I respectfully submit that this case should be reversed and remanded, or reversed and the cause dismissed.

*McIntosh & Tew,* for appellee.

The record abundantly shows that these cattle were dipped by the county's representative in charge of the vat; that the cows were in good shape when they went into the vat and when they came away were crippled and permanently injured; that one of the cows was worth forty-five dollars and the other seventy-five dollars before they were injured and that the forty-five dollar cow after she was injured was not worth anything and that the other cow had never been of any service from the time of her injury in September, 1917, up until the trial of this cause in said court in January, 1919.

The jury found that appellee's compensation would be sixty-five dollars. It is contended that chapter 38, Extraordinary Session of the Laws of 1917, is unconstitutional in that it places the liability on the county for damages previously accrued. This act does not create any liability; it only changes the mode of arriving at the damages. Under the law as it previously was the boards of supervisors of the respective counties should hear the evidence and pass upon the claims, determine the amount of damages and in their discretion pay the same; in other words the liability was there, but it rested in the discretion of the board of supervisors as to whether or not they shoud pay a claim even though in their opinion it was a just one. Under the act last referred to, this discretion was taken away from the board of supervisors and made it mandatory upon them to pay such just claims as might arise and thus giving the claimants a right to enforce their claims in a court of law.

We therefore respectfully submit that the verdict of the jury and a judgment of the court was right and that this case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

T. J. Fite sued Covington county for one hundred and twenty three dollars in a justice of the peace court for injury to two cows alleged to have been injured in a dipping vat. For alleged injuries received the claim was presented to the board of supervisors and disallowed, and suit was brought in a justice of the peace court. The justice rendered judgment in favor of the owner of the cattle for one hundred and twenty dollars and the cause was appealed to the circuit court, where a trial was had and verdict and judgment rendered for sixty-five dollars, from which judgment this appeal is prosecuted.

The suit is founded upon chapter 38 of the Acts of the Extraordinary Session of the legislature of 1917. Amoung other errors complained of is an instruction for the plaintiff in the following language:

"The court instructs the jury for the plaintiff that, if you believe from a preponderance of the testimony that plaintiff's cattle were permanently injured in the process of dipping, then the jury should find for the plaintiff and assess his damage such as would compensate him for the injury done the cattle not in excess of the amount sued for, to wit, one hundred and twenty-three dollars."

Chapter 38, Laws Extra Sess. 1917, reads as follows: "Section 1. Be it enacted by the legislature of the state of Mississippi, that any person in any county in this state shall be entitled to recover from such county reasonable compensation for any live stock owned by such person that may have been killed or permanently injured since March 1, 1916, or that may hereafter be killed or permanently injured in the process of dipping or as a result of such dipping for the eradiction of the cattle tick, where such dipping was done under the supervision of the board of supervisors or the livestock sanitary board.

"Sec. 2. That any owner of live stock making claim for damage for the death or injury of such live stock, shall first make proof of the amount of his loss or damage to the board of supervisors, and when conclusive proof has been made or submitted to the board and there being no evidence of contributory negligence on the part of the owner, and the board is satisfied that the said owner had suffered such loss, then the board of supervisors shall pay to such owner out of the general county funds, such amount as will compensate him for his loss or damage, but if the board of supervisors shall refuse to pay such claims, or any part of them, the owner

shall have the right of action against the county where such damage occurred.''

It will be noted from the provisions of section 2 of the act that the owner of live stock making claim for damages for the death or injury of such live stock must make ''conclusive proof'' of the injury, and that it was caused by the cattle being dipped. The question therefore presents itself as to whether the proof must be merely by preponderance of the evidence, or whether a higher degree of proof is required.

The legislature was conferring or creating a new right of action against the county. It had the power to prescribe the condition upon which the right should be exercised, adjudicated, and enforced. The word ''conclusive,'' in its primary legal meaning, means beyond question or beyond dispute. ''Conclusive evidence'' is that which is incontrovertible, or that from which only one reasonable conclusion can be drawn taking all the facts and surroundings into consideration. It is synonymous with manifest, plain, clear, obvious, visible, apparent, indubitable, palpable, and notorious. See 12 C. J., 388; Black's Law Dictionary (2d Ed.), p. 237; Words and Phrases, First and Second Series. We think in the present act it is equivalent to the expression ''to a moral certainty,'' or ''beyond a reasonable doubt.''

The facts in evidence in this case are such that we are unable to say that the jury would not have found for the appellant had this standard or degree of proof been required. There is such wide difference between the mere preponderance of evidence and conclusive evidence that we are unable to say that a different result could not have been reached had the true test of the degree of proof been stated to the jury, and the judgment is, accordingly, reversed, and the cause remended.

*Reversed and remanded.*