Triplett *v.* State.

(Division B. Feb. 9, 1931.)

[132 So. 449. No. 29206.]

Rodgers & Prisock and R. C. Jones, all of Louisville, for appellant.

**Wm. A. Shipman,** Assistant Attorney-General, for the state.

**Ethridge, P. J.**, delivered the opinion of the court.

Louis Triplett, the appellant, was indicted for murder in the circuit court of Winston county, and upon trial

was convicted of manslaughter and sentenced to twenty years in the state penitentiary; from which conviction he appeals here.

It will not be necessary to set forth the substance of the testimony for the state and for the defendant. Suffice it to say that the tendency of the state's evidence was to make the case one of murder, while the tendency of the defendant's evidence was to make the case one of self-defense. Nevertheless there were numerous witnesses introduced whose testimony is contained in the record, and there is considerable variance in the testimony of the different witnesses, and there was, no doubt, an imperfect seeing and understanding by the witnesses. The state did not ask a manslaughter instruction and neither did the defendant. The only mention of manslaughter in the instructions of the court is in one obtained for the defendant which does not define it but merely says: "The court instructs the jury for the defendant that neither murder nor manslaughter is predicatible of the mere fact that a deadly weapon was used where all the facts of the homicide are before the jury in the testimony of a large number of witnesses."

It is argued that inasmuch as the court did not define "maslaughter" and inasmuch as the instruction on the form of the verdict limited the jury to the three forms of verdict provided for convictions of murder in case the jury found him guilty, that a conviction of manslaughter should not be allowed to stand. In discussing this question counsel recognize the decision of the court in Calicoat v. State, 131 Miss. 169, 95 So. 318, wherein this court held that a person convicted of manslaughter instead of murder could not complain if the evidence showed that the killing was unlawful and wrongful, although the evidence might show it constituted murder instead of manslaughter. The court in that decision reviewed the prior decisions, some of which had held in accordance with the holding in the Calicoat case and some of which had held the contrary view. It seems that the

decision of Calicoat v. State, and others since that decision, make it clear that the court will adhere to the decision there announced. The verdict of the jury in such case establishes that the killing was wrongful and unlawful. The fact that the evidence makes murder rather than manslaughter is a matter of which the defendant cannot complain, as the verdict of manslaughter is favorable to him. Having found that the killing was unlawful and wrongful, he is given a more merciful verdict than he was entitled to. It is true that there was a dissent in one of the cases decided at the time the Calicoat case was decided, in which two of the judges expressed the view on that particular case that the cause should be sent back for retrial. A dissent is an expression of the minority of the court, while the majority opinion speaks the voice of the state. Consequently the dissenting opinion is a mere argument and not the announcement of the law.

However, apart from the decisions referred to, we think on the facts in this case the jury could have found a verdict of manslaughter if they believed certain parts of the testimony and disbelieved other parts of the testimony about which the evidence was conflicting. It often happens that eyewitnesses to a transaction, although all of them may be honest, do not see the transaction precisely alike. Their recollections may differ, and the recollection of one may be better than the recollection of another, or the capacity of one to observe and understand may be superior to that of another. It often happens in cases, and especially those involving the issues of liberty and life, that the testimony that comes from witnesses is a strange conglomeration of truth and error, of fact and fiction, and bias, prejudice, affection, favor or ill-will, or dislike. Different testimony containing the truth of gold and mixed with the dross of error and falsehood is carried into the crucible of the common sense minds of twelve men selected for their intelligence, sound judgment, and fair character, and these minds constituting

the crucible of reason often separate the refined gold from the dross. The jury are peculiarly able and in a position to understand the habits and thought of their neighbors and fellow citizens and are admirably equipped to judge as to what is truth and what is fiction or falsehood; they can understand both from observing the witness and his demeanor and fairness or bias and prejudice and his general standing and character, and this will show what credit to give to the testimony and what part to believe and what part to reject. We therefore are of the opinion that the evidence was sufficient to support the verdict.

It is next argued that the verdict of the jury does not find the defendant guilty of any offense known to the law. The verdict of the jury, copied in the record by the clerk separate and apart from the judgment of conviction, reads as follows: ''We the jury find the defendant, Louis Triplett, guilty of maslaughter.'' However, when we turn to the judgment of the court we there find that the jury rendered the following verdict: ''We the jury find the defendant, Louis Triplett, guilty of manslaughter.'' The judgment of the court is controlling, even if there is any merit in the contention, as argued, that the word ''maslaughter'' is not the equivalent of manslaughter, and that it is composed of two distinct words of well-known meaning. Both the counsel for the appellant and the attorney-general refer to many cases with reference to irregular spelling and recitals in verdicts. We do not deem it necessary, however, in this case to discuss that question. It must be presumed that the court correctly recited the verdict, and if the verdict was ambiguous or doubtful, that the court cleared it up before the verdict was finally received. There is nothing in the record to indicate that this was not done, and we must presume that it was done.

There was an objection to the admission in evidence of a jumper worn by the deceased at the time of the

killing which had supposedly been washed and blood stains removed, and a complaint of error in permitting this to be carried into the jury room when the jury retired for deliberation. We have examined this assignment and think it is without merit. The evidence showed that the jumper outside of being washed was in the same condition, but even if it had been erroneously admitted, there is nothing to show, in the light of the evidence in the record, that it had any misleading influences upon the jury. The judgment of the court below must therefore be affirmed.

Affirmed.