228 So.2d 599 (1969)
Vernon MURPHREE, Jr.
v.
STATE of Mississippi.
No. 45257.
Supreme Court of Mississippi.
November 10, 1969.
Rehearing Denied December 15, 1969.
J. Robertshaw, Robertshaw, Merideth & Swank, Greenville, for appellant.
A.F. Summer, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., and Velia A. Mayer, Sp. Asst. Atty. Gen., Jackson, for appellee.
BRADY, Justice.
This is an appeal from the Circuit Court of Washington County, Mississippi, wherein the appellant, Vernon Murphree, was convicted of the crime of manslaughter and was sentenced to serve four years in the Mississippi State Penitentiary, two years of said sentence being suspended by the trial judge.
The tragedy involved here is as old as mankind and as new as a sunrise. The events leading up to the tragic death of the deceased, Charles Jones, began at 4:30 and 5:30 on the afternoon of April 8, 1968. The *600 sequence of events is well stated in the testimony of Mrs. Sherry Diane Oakes, a witness for the State. Mrs. Oakes was sitting in Mrs. Mary Frances Smith's automobile at Dan's Barbecue, a drive-in restaurant in Greenville, near the Dairy Queen where her friend, Mary Frances Smith, worked. They were going to spend the night together, and she was waiting for Mrs. Smith in the latter's car when appellant drove up. He knew Mrs. Oakes and got into the car with her where they engaged in conversation largely centered around the appellant's wife, Glenda, from whom he was then separated.
The appellant asked Mrs. Oakes if she knew who owned a white automobile parked nearby, and if she had seen the boy who got out of it. He wanted to know whether or not Mrs. Oakes knew of Glenda "going out on him," to which she replied that she did not know his wife. They talked for some time, the gist of their conversation being how much he loved his wife, Glenda, and that he would take her back if she would come back. The appellant then went into Dan's Barbecue and stayed about thirty minutes. When he emerged, the deceased, Charles Jones, approached the appellant and asked if he was Vernon Murphree. He then stated, "I hear you are looking for me." Appellant replied, "No, I am not looking for you, but since you are here, I will talk to you." They started talking and Charles told Vernon that he had been seeing Glenda but did not intend to see her any more, but that if he ever did see her again, he did not want Vernon to speak to her, touch her, or have anything to do with her when he [Charles] was with her. Appellant then said that Glenda was still his wife and that if he wanted to talk to her he would at any time. Deceased said, "I think we could be friends, if you don't cause any trouble between me and Glenda." Appellant said, "I don't have no intention of making trouble for anyone." They then shook hands and walked away from each other.
Following this conversation, the appellant got back in the car with Mrs. Oakes. As they drove down the highway, she told him that she had heard the deceased bragging to some boys that he had a date with Glenda that very night. At his request, she took him back to Dan's where he got in his car and drove off. Mrs. Oakes followed him down the highway as far as the Dairy Queen, where she was joined by her girl friend, Mary Frances Smith.
Mrs. Oakes told Mrs. Smith what had transpired. Mrs. Smith replied, "I have an idea where he is going," and they proceeded to the area where Glenda lived. There they found the appellant in his automobile stopped at a stop sign and they stopped beside him. Mrs. Oakes had gotten out of Mrs. Smith's car and was preparing to get into appellant's car when the deceased and Glenda, the appellant's wife, drove past them in the deceased's automobile. Appellant followed behind the deceased's car, leaving Mrs. Oakes standing beside the car. Mrs. Oakes returned to Mrs. Smith's car which proceeded to follow the appellant.
The deceased, with Glenda in his car, drove to Magnolia Ambulance Service, the place of deceased's employment, which was located on a narrow street, and drove into the driveway, stopping perpendicular to the street. The appellant stopped at an angle behind the deceased's car, and Mrs. Oakes and Mrs. Smith stopped their car in the street, behind the appellant's car. When they arrived, the deceased had gotten out of his car, and the appellant was getting out of his car. Mrs. Oakes testified that the appellant got out of his car and had what she described as a tire tool in his hand. The appellant and the deceased then began a fight which was ended by the arrival of Mr. Charles E. Smith, the operator of the Magnolia Ambulance Service, with a shotgun. At this point both combatants were on the ground and neither was doing anything to inflict harm upon the other. Mr. Smith ordered appellant to leave, which he did by getting in his car and driving off. It was then discovered that Charles Jones was seriously injured and he was moved to a cot in the office of the ambulance service. *601 From there he was moved to the Greenville General Hospital, and then to the University Hospital in Jackson. Deceased died as the result of an injury, received in the combat, which extended from the right eye socket six inches into the brain.
Appellant contends that the trial court erred in refusing to grant the appellant a peremptory instruction and in overruling a motion for a new trial. The motions were properly overruled because the evidence was conflicting and the jury is the sole judge of the credibility of witnesses and the weight and worth of their testimony. This wise rule applies with equal force to the State's witnesses as to the appellant's witnesses, including the appellant. We have repeatedly held that jurors may accept the testimony of some witnesses and refuse that of others, and that they may accept in part and reject in part the evidence on behalf of the State and on behalf of the accused. McLelland v. State, 204 So.2d 158 (Miss. 1967); Cobb v. State, 235 Miss. 57, 108 So.2d 719 (1959); Ivey v. State, 206 Miss. 734, 40 So.2d 609 (1949); Hill v. State, 199 Miss. 254, 24 So.2d 737 (1946). It is not for this Court to pass upon the credibility of witnesses, and where the evidence justifies the verdict it must be accepted as having been found worthy of belief. McLelland v. State, supra; Matthews v. State, 243 Miss. 568, 139 So.2d 386 (1962); Scott v. State, 185 Miss. 454, 188 So. 546 (1939).
It is obvious that this Court cannot set aside a verdict of guilty unless it is clear that the verdict is the result of bias, passion or prejudice or is manifestly against the overwhelming weight of the credible evidence. McLelland v. State, supra; Marr v. State, 248 Miss. 281, 159 So.2d 167 (1963); Henderson v. State, 187 Miss. 166, 192 So. 495 (1939). Furthermore, all the proof need not be direct and the jury may draw any reasonable inferences from the evidence in the case. McLelland v. State, supra; Woodward v. State, 180 Miss. 571, 177 So. 531, 178 So. 469 (1938).
It is unquestioned that the appellant and the deceased engaged in a fight, and Charles Jones died from a wound he received therein. The testimony presented a typical case for factual determination by the jury and only the jury could resolve the conflicting testimony. Since the State's evidence was credible and the proof offered by the State was not against the overwhelming weight of the evidence as claimed by appellant, we hold that there is no merit in the foregoing errors assigned by appellant.
Insofar as appellant's contention that he should be granted a new trial because of the district attorney's failure to furnish the appellant with a copy of the FBI report which stated in substance that there was not enough material on the lethal weapon to determine what caused the stain thereon, we hold that even if the appellant had been furnished the FBI's information mentioned above, this would not have constituted evidence sufficient to have permitted the jury to have rendered a verdict of not guilty. The proof in this case is overwhelming that the tire tool was the lethal weapon used by appellant. The State was under no obligation to even introduce the tire tool. The proof is sufficient without the introduction of the tire tool and for these reasons we hold that there is no merit in appellant's contention. The State must not conceal material evidence. Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). However, there was no such denial of due process of law here, since the FBI report was wholly inconclusive, if not irrelevant, on the issue of the identity of the homicidal weapon.
For the same reasons, appellant's petition for writ of error coram nobis is denied. See Murphree v. State, 222 So.2d 694 (Miss. 1969); Wetzel v. State, 225 Miss. 450, 76 *602 So.2d 188, 194, 846, 78 So.2d 774, 84 So.2d 429, 91 So.2d 750 (1954).
For the foregoing reasons, the judgment is affirmed.
Affirmed.
ETHRIDGE, C.J., and RODGERS, PATTERSON and SMITH, JJ., concur.