ROBERTSON, Justice,
for the Court:
Victor Wayne Moran was indicted, tried and convicted in the Circuit Court of the First Judicial District of Harrison County, Mississippi, of the murder of Bessie D. Myers. The court sentenced Moran to life in the state penitentiary. Moran appeals.
*464 On September 29, 1974, Moran, aged 20, and his 15-year-old girl friend, Vicki Galin, went to visit 84-year-old Bessie Myers, whom Moran had known all of his life. Mrs. Myers lived across the street from Moran’s parents. Moran asked Mrs. Myers if she knew of a place that he and his girl friend could stay until he found a job. Moran had been out of work for about a month, and he and his girl friend wanted to get married.
Mrs. Myers got a neighbor, Mrs. McKay, to drive Moran, Vicki and Mrs. Myers to Marine Life where her grandson was working. The grandson, Robert “Butch” Johnson, owned an apartment building and Mrs. Myers prevailed upon him to let Moran and his girl friend stay there with him and his tenant couple, Grace and Charles Craig, until Moran located a job. Mrs. Myers also gave Moran $2 for cigarettes. That night, September 29, 1974, the Craigs slept in one bedroom, Moran and his girl friend in the other, and Johnson on the couch in the living room.
The next morning, around 7:00 a. m, Johnson and Charles Craig left for work. About 10:00 a. m., Moran left the apartment supposedly to look for a job. According to Moran, he walked to the unemployment office. Just before he arrived there, he testified that he picked up a smashed Coke can which was on the sidewalk and in throwing it away cut his finger. He stated that he then entered the unemployment office, sat down, and began wiping the blood from his cut finger on his pants leg. He left the unemployment office a short time later and went to his mother’s home, which was located approximately 50 yards from Mrs. Myers’ home. Moran had coffee with his mother and then left to go to Mrs. Myers’ house without advising his mother of his plans.
Moran took the stand in his own defense and testified that he went over to Mrs. Myers’ home about 11:00 a. m. on September 30, 1974. Moran continued:
“And then she was listening to Billy Graham on the radio. So I wanted to look through the Bible so I asked her if she had a Bible and I could look through it. And, uh, we started talking about the Bible. And then she said after awhile she got tired and wanted to go back and lay down. So I said I’d leave. And then I handed her the Bible through the screen door, and, uh, as she turned, she, uh, as she turned around she started to fall. And I opened the screen door and, uh, tried to keep her from falling. And that’s when I fell with her, and, uh, when she fell she hit her head. And, uh, I seen blood so I just panicked and I ran.”
Moran returned to his apartment where Grace Craig and Vicki questioned him about the blood on his pants legs. Moran didn’t answer them, but instead got up and changed his trousers and washed his face, hands and arms. He told no one about Mrs. Myers’ fall and seeing her bleeding profusely-
That afternoon about 6:00 p. m., Butch Johnson, Mrs. Myers’ grandson, returned to the apartment and told them that he had some bad news, that his grandmother, Mrs. Myers, was dead.
The next day, October 1st, Detective Donald Everett of the Gulfport Police Department was given the blue jeans that Moran was wearing when he visited Mrs. Myers the day before, by Grace Craig, and he sent these blue jeans to Mississippi Crime Laboratory for examination. When shown the blue jeans at the trial, Detective Everett testified that they were in the same condition as when he received them on October 1st, except for the cuts in the lower pants legs and cuffs. Mr. Meredith A. Bass of the Mississippi Crime Laboratory testified that he cut patches from Moran’s blue jeans so that they could be properly examined and tested in the laboratory. He made black marks on the blue jeans where human blood was found and where he had cut out swatches for examination. Bass testified that these tests revealed human blood on both legs of Moran’s blue jeans below the knee, and human blood on the raveled cuffs of the blue jeans. There was blood on the toe of one of Moran’s steel-toed shoes, but this was not identified as human blood.
*465 The only assignments of error were that: The trial court erred in allowing the State to introduce into evidence the pants after the same had been cut, giving a false impression which was inflammatory and prejudiced the jury against the accused.
The jury verdict was against the overwhelming weight of the evidence and the trial court erred in refusing to grant motion for a new trial.
The Supreme Court of Missouri was confronted with the same problem of trousers that had been cut in State v. Sprout, 365 S.W.2d 572 (Mo.1963). The Court reached the conclusion that the trousers were properly admitted into evidence, in this way:
“Defendant contends his trousers should not have been received in evidence because they were not in the same condition as when seized by the officers. Lieutenant Rhodes, the State’s expert witness on blood types, testified that he had cut some areas out of defendant’s trousers and shirt in order to make the necessary laboratory examination to determine whether the spots involved were human blood stains, and the type of blood involved. The two articles were positively identified as defendant’s trousers and shirt. Defendant so admitted to the officers. We quote the following from 32 C.J.S., Evidence, § 607: ‘In order that an article may be so introduced it must be satisfactorily identified, and it must also be shown to the satisfaction of the court that no such substantial change in the article exhibited as to render the evidence misleading has taken place. However, it is not necessary that the article be identically the same as at the time in controversy. It is unnecessary to show an absence of tampering on the part of every person through whose hands the article has passed; as long as the article can be identified it is immaterial in how many or in whose hands it has been.’ We conclude defendant has failed to establish that his trousers should have been excluded on the ground assigned.”
365 S.W.2d at 575.
In a case where a jumper had been supposedly washed and the blood stains removed, we ruled that the jumper was properly admitted into evidence. Triplett v. State, 159 Miss. 365, 132 So. 448 (1931).
In Ivey v. State, 232 So.2d 368 (Miss.1970), this Court ruled that a torn shirt which had been laundered was properly admitted into evidence as aii exhibit.
The trial court did not abuse its discretion in admitting into evidence Moran’s trousers which had not been substantially altered or changed.
The second assignment of error, that the verdict was against the overwhelming weight of the evidence, is without merit.
Dr. Ricardo Lopez, the pathologist who performed an autopsy on the body of Bessie Myers on October 1, 1974, testified that Mrs. Myers died from terminal shock caused by multiple abrasions, lacerations, hemato-mas, and six skull fractures. He testified positively that in his opinion these multiple injuries could not have been caused by a simple fall.
Rather than being against the overwhelming weight of the evidence, the jury’s verdict is in accord with the overwhelming weight of the evidence. The jury was fully justified in finding the defendant guilty beyond a reasonable doubt and to a moral certainty.
The conviction of murder and the sentence to life imprisonment are, therefore, affirmed.
AFFIRMED.
GILLESPIE, C. J., PATTERSON and IN-ZER, P. JJ., and SMITH, SUGG, WALKER, BROOM and LEE, JJ., concur.