427 So.2d 701 (1983)
Arthur Lee ERVING
v.
STATE of Mississippi.
No. 54061.
Supreme Court of Mississippi.
March 2, 1983.
Colom, Mitchell & Colom, Wilbur O. Colom, Dorothy Winston Colom, Columbus, for appellant.
*702 Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before BROOM, BOWLING and HAWKINS, JJ.
BOWLING, Justice, for the Court:
Appellant Arthur Lee Erving was indicted, tried and convicted for the crime of murder in the Circuit Court of Attala County. He was sentenced to serve a term of life in the custody of the Mississippi Department of Corrections. On appeal he assigns the following as errors:
I. WHEN THE EVIDENCE PRESENTED IN A MURDER PROSECUTION IS CIRCUMSTANTIAL AND INSUFFICIENT TO SUSTAIN A CONVICTION, WAS IT ERROR FOR THE TRIAL COURT TO OVERRULE A MOTION FOR DIRECTED VERDICT AND REFUSE A PEREMPTORY INSTRUCTION?
II. WHEN THE PROSECUTION PRESENTS NO DIRECT PROOF, IS A REFUSAL BY THE TRIAL JUDGE TO GIVE DEFENDANT'S CIRCUMSTANTIAL EVIDENCE INSTRUCTION CONTAINING THE PHRASE "TO A MORAL CERTAINTY" REVERSIBLE ERROR?
In discussing the first alleged error regarding the sufficiency of the evidence, it is necessary to discuss parts of the evidence.
We first call attention to the fact that in discussing this alleged error, we are required to consider the evidence in the light most favorable to the state and accept as true the evidence supporting, or tending to support, the verdict, with all inferences supportive of the verdict that reasonably may be drawn therefrom. Robinson v. State, 418 So.2d 794 (Miss. 1982); Sadler v. State, 407 So.2d 95 (Miss. 1981); Spikes v. State, 302 So.2d 250 (Miss. 1974); Glass v. State, 278 So.2d 384 (Miss. 1973); and Murphree v. State, 228 So.2d 599 (Miss. 1969).
At the time of the incidents related in the record, appellant and the deceased were living in the same apartment complex known as Glendale Apartments. Deceased Isaiah Hall, Jr. was shot and killed early in the morning of September 20, 1980. The incident started late that night and continued until after midnight. According to witnesses, on the previous night the appellant had engaged in an argument with the wife of the deceased regarding the behavior of their children. At around midnight, the night in question, Erving drove to the front of the apartment where he was confronted by Hall regarding the incident with Hall's wife and children. According to witnesses, Erving produced a knife and immediately thereafter Hall went to his pickup truck and secured a sledge hammer. Appellant then ran toward the apartment and through the breeze-way thereof. A witness in the apartment complex heard someone running down a path that led across the back of the apartment complex and to an area known as Craig Hill. The proof showed there was a distance of 3,881 feet between Glendale Apartments and Craig Hill.
Not long after midnight Hall was sitting on the hood of his pickup truck with others, when a shot was fired from the direction of the apartments. Hall caught his left shoulder, fell to the ground, and died a short time thereafter. Appellant's second cousin, who lived at Craig Hill, testified that at approximately 1 o'clock a.m., appellant came to his house and asked to use the telephone. Another witness who lived in the Glendale Apartments testified that at approximately the same time, her telephone rang and the appellant requested that she get appellant's wife to the telephone, as appellant did not have one in his apartment.
The cousin was asked by appellant to take him to the home of Ellis Erving, appellant's father, who lived about ten miles away in the community known as Possum Neck. The cousin drove appellant there and on the way he heard appellant state: "Well, I took and took and took and I just couldn't take no more." Before daylight appellant's father Ellis Erving, two of appellant's brothers and a brother-in-law came to the cousin's house at Craig Hill and *703 asked assistance in trying to find a gun. This was confirmed by another relative who lived nearby. They all looked for the gun around a junk yard between Glendale Apartments and Craig Hill, but could not find one. Appellant returned to the home of his father. Shortly after midnight a police officer found a 30.06 rifle under an old abandoned couch about ten feet from the path leading from the Glendale Apartments to Craig Hill. The rifle was 1,783 feet from the apartments.
The police officers found an empty rifle shell near the back corner of the apartments. An expert testified that this cartridge was tested in regard to the rifle found under the couch, and the cartridge was actually fired from that particular rifle. A fingerprint expert testified a print taken from the clip still in the rifle was definitely that of appellant.
There was other testimony that we do not believe is necessary to recite, except to say that all of it, and especially that hereinabove set out, clearly made an issue for the jury to determine appellant's guilt or non-guilt.
Appellant alleges that the action of the trial judge in striking a portion of submitted instruction was error. Appellant contended there was only circumstantial evidence which required giving the instructions. This instruction appears in the record as follows:
D. INSTRUCTION NO. 4
The Court instructs the jury that you must believe from the evidence in this case beyond every reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant, Arthur Lee Erving, did wilfully, unlawfully, feloniously, and of his malice aforethought kill and murder the deceased by shooting him before you can find the defendant guilty, and should the State fail to prove the defendant's guilt beyond every reasonable doubt XXXXXXXXXXX and to the exclusion of every reasonable hypothesis of innocence, from the evidence, then it shall be your sworn duty to find the Defendant, Arthur Lee Erving, not Guilty.
The striken part of the instruction was "to a moral certainty." The trial court finding that the evidence in the case only justified requiring the state to prove defendant's guilt "beyond every reasonable doubt and to the exclusion of every reasonable hypothesis of innocence." Over the years, there have been a number of cases discussing all three requirements included by appellant in submitting the requested instruction. In most of these discussions, it was whether or not the evidence presented by the state was wholly circumstantial or only circumstantial in part.
A decision on this circumstantial evidence question necessarily is a hard one to make. In most cases some evidence is circumstantial and some is not. In the present case, no one actually saw appellant shoot the deceased. We are constrained to say, however, that some of the evidence regarding the actions the night of the incident is more than circumstantial. This includes appellant's fingerprint on the rifle clip; the finding of the cartridge definitely proved to have been fired from the gun; the appellant going to his cousin's house about the time of the shooting and being taken to the home of his father about ten miles away from the crime scene; and the statement he made on the way. After these actions, the fact that the father, brothers and others searched for a gun, appears to take the case out of wholly circumstantial set of facts.
Assuming that we are required to say that the entire proof of the state was circumstantial proof, we have held that the accused under such a set of facts is only entitled to an instruction requiring the state to prove the guilt of the accused "beyond every reasonable doubt and to the exclusion of every reasonable hypothesis of innocence." In Walton v. State, 212 Miss. 270, 54 So.2d 391 (1951), this Court discussed the meaning of the phrase "to a moral certainty," and noted the word "reasonable doubt" and "moral certainty" to be used interchangeably and to be synonymous:

*704 The next assignment of error argued is that the court erred in giving the state the following instruction: "The court instructs the jury for the state that if you believe from the testimony in this case beyond a reasonable doubt that the defendant * * * then it would be your sworn duty to find the defendant guilty as charged." Counsel for appellant contends that the giving of this instruction was error for the reason that it did not contain the words "and to a moral certainty", citing the cases of Cumberland v. State, 110 Miss. 521, 70 So. 695, 696, and Jeffcoat v. State, Miss., 21 So.2d 8, 10. In the Cumberland case, the trial court refused an instruction requested by the defendant telling the jury "that * * * the state must make out her case to a moral certainty * * *." This Court held that this instruction should have been given. In the Jeffcoat case, the Court used the words "proved * * * to a moral certainty, beyond all reasonable doubt." However, neither of these cases required the State to include in its instruction "prove beyond all reasonable doubt" and "to a moral certainty". We had been cited to no authority requiring this to be done. The words "reasonable doubt" and "to a moral certainty" are used interchangeably and are synonymous. In the case of Covington County v. Fite, 120 Miss. 421, 82 So. 308, 309, the Court held that conclusive proof was the equivalent of "to a moral certainty" or "beyond a reasonable doubt." This definition was followed in Jackson Co. v. Meaut, 181 Miss. 282, 179 So. 343. For other definitions of moral certainty, see 27 Words and Phrases, p. 545, et seq.
In Commonwealth v. Costley, 118 Mass. 1, the Court said: "The phrase `moral certainty' has been introduced into our jurisprudence from the publicists and metaphysicians, and signifies only a very high degree of probability. It was observed by Pufendorf, that, `when we declare such a thing to be morally certain, because it has been confirmed by creditable witnesses, this moral certitude is nothing else but a strong presumption grounded on probably reasons, and which very seldom fails and deceives us.' Law of Nature & Nations (Eng. ed. 1749) book 1, c. 2, sec. 11. `Probable evidence,' says Bishop Butler in the opening sentence of his Analogy, `is essentially distinguished from demonstrative by this, that it admits of degrees, and of all variety of them, from the highest moral certainty to the very lowest presumption.'
"Proof `beyond a reasonable doubt' is not beyond all possible or imaginary doubt, but such proof as precludes every reasonable hypothesis except that which it tends to support. It is proof of a moral certainty, as distinguished from an absolute certainty. As applied to a judicial trial for a crime, the two phrases are synonymous and equivalent; each has been used by eminent judges to explain the other; and each signifies such proof as satisfies the judgment and consciences of the jury, as reasonable men, and applying their reason to the evidence before them, and that crime charged has been committed by the defendant, and so satisfies them as to leave no other reasonable conclusion possible."
Appellant relies upon Barrett v. State, 253 So.2d 806 (Miss. 1971), to argue the trial court erred in striking the words "to a moral certainty." Although, Barrett reversed and remanded appellant's cause for a new trial because the jury was not instructed that the State was required to prove its case "to a moral certainty and to the exclusion of every reasonable hypothesis except that of guilt," a full reading of the cases relied upon by Barrett reveal reversible error to be founded in circumstantial cases upon instructions deleting the phrase "and to the exclusion of every other reasonable hypothesis." That is the essential phrase, not "to a moral certainty." See Kendall v. State, 217 So.2d 35 (Miss. 1968); Williams v. State, 220 Miss. 800, 72 So.2d 147 (1954); Hardy v. State, 177 Miss. 727, 172 So. 131 (1937); and Warren v. State, 166 Miss. 284, 146 So. 449 (1933).
We hold in cases based upon circumstantial evidence, the phrase "to a moral *705 certainty", being interchangeable and synonymous with "beyond a reasonable doubt", is not required but rather only the additional phrase "and to the exclusion of every other reasonable hypothesis" as already held by this Court numerous times.
Having held such, we conclude the jury was properly instructed under appellant's instruction as changed by the trial court. Therefore, there is no merit to this assignment of error.
Finding no error in the trial of this case, it must be affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P. JJ., and ROY NOBLE LEE, HAWKINS, PRATHER and ROBERTSON, JJ., concur.
DAN M. LEE, J., concurs in result only.