# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-02010-SCT

*JIMMY RAY TURNER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/29/1999 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES B. EVERETT |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | EDDIE H. BOWEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/02/2001 |
| MOTION FOR REHEARING FILED: | 8/29/2001; denied 10/18/2001 |
| MANDATE ISSUED: | 10/25/2001 |

### BEFORE PITTMAN, C.J., DIAZ AND EASLEY, JJ.

### PITTMAN, CHIEF JUSTICE, FOR THE COURT:

¶1. Jimmy Ray Turner was indicted by a Smith County Grand Jury for "wilfully, unlawfully and feloniously" killing Candice Turner, his wife, "in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of Candice Turner, in violation of Section 97-3-19(1)(b) of the Mississippi Code of 1972." The indictment did not contain the phrase "without the authority of law," as found in Miss. Code Ann. § 97-3-19(1) (2000), but it did include the term "unlawfully."

¶2. At trial, the jury returned a verdict of guilty of murder, and Turner received a sentence of life imprisonment. The Smith County Circuit Court denied Turner's post-trial motion for judgment notwithstanding the verdict or in the alternative a new trial. Turner then filed this appeal.

## FACTS

¶3. Jimmy Ray Turner ("Turner") and his wife Candice Turner, ("Candice") lived with their son in a trailer near the trailer of Turner's parents, James and Janet. Turner was home from work on August 26, 1998, because he got dehydrated two days before. Candice left that morning to go look for an apartment in Hattiesburg because the couple contemplated a divorce.

¶4. During trial, Turner claimed that he was not feeling well that morning because of shots he had received from a physician the day before, and that the medication caused him not to recall details of the morning before the shooting. Shortly after speaking to an attorney regarding the cost of a divorce, Turner began drinking beer between 2:00 and 2:30 p.m., consuming close to a six pack before 4:00 p.m.

¶5. Sometime between 3:00 and 3:30 p.m. Candice returned from looking at apartments in Hattiesburg. After Candice had visited at her in-laws' trailer, she went home where, according to Turner, he and Candice argued about whether she was going to move out. Turner testified that he and Candice ultimately decided to continue to live together. Turner and Candice then left their trailer to stop by his parents to return a borrowed shotgun before they were to leave for Mt. Olive to pick up Turner's paycheck.

¶6. Candice walked ahead of Turner as they were approximately twenty feet from his parent's trailer. Turner testified that he did not think the shotgun was loaded and demonstrated how he carried it with his fingers on the triggers and swung his arms as he walked. Turner testified that Candice slowed down in front of him while he was looking in another direction, causing him to bump into her, which resulted in him jerking back and the shotgun firing, fatally wounding Candice from behind. Turner referred to the ground where the shooting occurred as having a "big dip" in it as an explanation for the unusual angle in which the shots went into Candice's body.

¶7. Dr. Steven Timothy Hayne, a forensic pathologist, testified as an expert for the prosecution. Dr. Hayne performed the autopsy on Candice's body and testified regarding the injuries, scrapes, and bruises that Candice received due to the shooting. Dr. Hayne described in detail that a deposit of unburnt gunpowder will be left on a target when a shotgun is fired at a distance of three feet or less. Dr. Hayne confirmed that there was no flaming, tattooing or smudging found on Candice that would indicate that the shotgun was fired at her within a distance of three feet. Dr. Hayne also testified that the characteristics of the two entrance shotgun wounds, as well as the filler abrasions found in the wounds, indicated to him that the shotgun was fired at a distance of approximately four feet away. Dr. Hayne explained the angle of trajectory and path that the shotgun blasts traveled as they entered the upper middle part of the back, and how they exited "the upper part of the back just below the neck and in the neck area," and then re-entered "in the upper part of the neck area and the back of the head." When asked to state the cause of death, Dr. Hayne stated that "Candice Turner died of two shotgun wounds to the upper back, both distant . . . ."

¶8. Dr. Hayne also testified that Turner's explanation of the shooting was not consistent with his findings because "the distance was too close." Dr. Hayne explained that if Turner's account were true, the shooting would have occurred within two feet of Candice and there would have been "extensive powder residue deposited on the target." Dr. Hayne also testified that, judging from the trajectory of the gunshot, it was his conclusion that Turner was standing and Candice was "down, essentially on the ground," and "leaning forward" when the shooting occurred. Dr. Hayne also explained that it was not possible for Candice to turn around and look at Turner after the shotgun fired, as described by Turner on video shown at trial, because the injuries Candice received to her cerebellum would have caused her to lose motor function instantly. Dr. Hayne, when asked if he believed that Candice was standing when she was shot, replied "no, she was not." Dr. Hayne explained that it was physically impossible for the shooting to have occurred as described by Turner because "the trajectory would be incorrect given the position of the shotgun when it was fired that one does not achieve the 70 to 80 degree upper trajectory in position fired the way it was demonstrated, and it would also have to be fired at a distance of approximately four feet."

¶9. The jury found Turner guilty of "depraved-heart" murder, and he was sentenced to life imprisonment. Aggrieved by this result, Turner timely perfected this appeal.

**DISCUSSION**

## I. WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE, AND WAS THE TRIAL COURT IN ERROR IN OVERRULING TURNER'S MOTION FOR A DIRECTED VERDICT?

¶10. This Court reviews challenges to the legal sufficiency of the evidence used to support a conviction as follows:

> When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence--not just that supporting the case for the prosecution--in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.

*Mangum v. State*, 762 So.2d 337, 341 (Miss. 2000)(citations omitted).

¶11. As to the weight of the evidence this Court will order a new trial, "[o]nly where the verdict is so contrary to the overwhelming weight of evidence that to allow it to stand would be to sanction an unconscionable injustice. . . ." *Id.* at 342, (citing *Herring v. State*, 691 So.2d 948, 957 (Miss.1997)).

¶12. Turner bases his claim that the verdict was against the overwhelming weight of the evidence on the fact that he was the only witness to the shooting, and he asserts that there was not sufficient evidence presented to convict him of murder. Turner also contends that Dr. Hayne's expert testimony did not materially contradict the evidence and testimony which Turner provided.

¶13. Turner relies on the *Weathersby* Rule, found in *Weathersby v. State*, 165 Miss. 207, 209, 147 So. 481, 482 (1933), where this Court determined that "where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge." Turner asserts that the *Weathersby* Rule entitled him to a directed verdict, which was denied by the trial court.

¶14. The *Weathersby* Rule is only applicable where the defendant's version is reasonable, unopposed by other testimony, and is uncontradicted by the physical evidence. In the present case, Dr. Hayne presented substantial expert testimony regarding the lack of gunpowder residue on the deceased and the trajectory of the shotgun blast that materially contradicted Turner's version of the shooting. This material contradiction made the matter of Turner's guilt an issue that was proper for the jury to consider. This Court has stated, "[t]he *Weathersby* Rule ... is not a jury instruction but a guide for the circuit judge in determining whether a defendant is entitled to a directed verdict." *Mallett v. State*, 606 So.2d 1092, 1094 (Miss. 1992) (citing *Blanks v. State*, 547 So.2d 29, 34 (Miss.1989); *Griffin v. State*, 495 So.2d 1352, 1355 (Miss.1986); *Harveston v. State*, 493 So.2d 365 (Miss.1986)).

¶15. The trial court did not err when it denied Turner's motion for a directed verdict and a JNOV.

Likewise, viewing this evidence in the light most favorable to the verdict, the jury's determination that Turner was guilty of depraved-heart murder was not against the overwhelming weight of the evidence. This issue is without merit.

## II. WAS THE TRIAL COURT IN ERROR IN OVERRULING TURNER'S MOTION TO QUASH THE INDICTMENT?

¶16. Turner contends that the indictment against him failed to charge an essential element of the crime when it substituted the word "unlawfully" for the phrase "without the authority of law," making it fatally defective, and that the trial court was in error when it overruled his motion to quash the indictment.

¶17. Turner was indicted for depraved-heart murder in violation of Miss. Code Ann. § 97-3-19(1)(b), which states:

> (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:

> (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual;

Turner's indictment correctly referenced the depraved-heart murder statute, but substituted the word "unlawfully"in the place of "without the authority of law."

¶18. Turner points to *Edwards v. State*, 737 So.2d 275 (Miss. 1999) for support that the indictment against him failed to charge him with an essential element of the crime. Edwards had been indicted for killing two people while engaged in the crime of armed robbery, in violation of Miss. Code Ann. § 97-3-19(2)(e). *Edwards*, 737 So.2d at 293. On appeal, Edwards asserted that his conviction and sentence should be reversed "because the instructions given did not comport with the indictment against him." *Id.* at 291. The indictment included the term "without authority of law" as found in the statute, "but the instruction[s] failed to require the jury to find beyond a reasonable doubt that the killings were without authority of law." *Id.* at 293. This Court determined that this omission in the instructions amounted to a substantive change in the indictment and that Edwards was prejudiced by the amendment occurring at such a late date. *Id.* This Court stated that "'[w]ithout authority of law' is a statutory element of capital murder and accordingly, it should have been contained within the instructions. " *Id.* at 294. This Court found that the trial court committed reversible error and remanded for a new trial. *Id.*

¶19. Turner's reliance on *Edwards* is misplaced. The present case does not concern an omission of essential statutory language in jury instructions, as found in *Edwards*, but rather if using the term "unlawfully" in the place of "without authority of law" in the indictment resulted in Turner not being charged with an essential element of the crime.

¶20. Replacing "without the authority of law" with "unlawfully"in the indictment did not fail to charge Turner with an essential element of the crime of depraved-heart murder as it is set out in Miss. Code Ann. § 97-3-19(1)(b). A common sense analysis of the definition of "unlawfully," similar to the analysis of "'[w]ilfully or willfully' and 'intentionally'"found in *Lester v. State*, 692 So.2d 755, 789-90 (Miss. 1997), *overruled on other grounds*, *Weatherspoon v. State*, 732 So.2d 158, 162 (Miss. 1999), shows that "without the authority of law" is synonymous with "unlawfully" and that they are interchangeable. Black's Law Dictionary

defines unlawful as "not authorized by law; illegal." *Black's Law Dictionary* 1536 (7th ed. 1999). Webster's defines unlawful as "not lawful: contrary to or prohibited by law: not authorized or justified by law: not permitted or warranted by law." *Webster's Third New International Dictionary* 2502 (1986). The word "unlawfully" and the phrase "without the authority of law" are interchangeable.

¶21. The trial court did not err in overruling Turner's motion to quash the indictment. This issue is without merit.

### III. DID THE TRIAL COURT ERR IN GRANTING STATE'S INSTRUCTION NO. S-2 AND STATE'S INSTRUCTION NO. S-5 CONTAINING THE PHRASE "WITHOUT THE AUTHORITY OF LAW OR IN ITS INSTRUCTION OF THE JURY?

¶22. Turner contends that the trial court erred in granting State's instruction No. S-2 and State's instruction No. S-5 containing the phrase "without authority at law" when the phrase was not a part of the indictment, and that the granting of these two instructions resulted in the indictment being amended. Turner also asserts that the granting of these instructions constituted improper instruction of the jury which should result in reversal.

¶23. Our cases address the effect of using the term "unlawfully" in the place of "without authority of law" in jury instructions. "[S]ynonymous phrases or interchangeable words may be used in a jury instruction and the jury still be properly instructed." *Lancaster v. State*, 472 So.2d 363, 367 (Miss.1985) (citing *Erving v. State*, 427 So.2d 701, 703-05 (Miss.1983)). Since the word "unlawfully" and the phrase "without authority of law" are synonymous, no error occurred in substituting "unlawfully" for "without authority of law" in the jury instruction. *Lester v. State*, 692 So.2d at 790. *Accord*, *Robinson v. State*, 758 So.2d 480, 488 (Miss. Ct. App. 2000).

¶24. Relying on this Court's decision in *Lester* that the term "unlawfully" is synonymous with the phrase "without authority of law" in the context of jury instructions, we find that the trial court did not err when it granted the State's instructions numbered S-2 and S-5. We also find that these instructions did not improperly instruct the jury. This issue is without merit.

### CONCLUSION

¶25. Finding no reversible error, we affirm the judgment of the Smith County Circuit Court.

¶26. **CONVICTION OF MURDER AND SENTENCE TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**BANKS AND McRAE, P.JJ., SMITH, MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR.**