MAY *v.* STATE.

In Banc. Feb. 14, 1949.

(38 So. (2d) 726)

**J. M. Travis,** for appellant.

**Geo. H. Ethridge**, Assistant Attorney General, for appellee.

**Smith, J.**

Upon an indictment charging him with the murder of Richard Lang, appellant was convicted in the Circuit Court of Jasper County, and sentenced to the penitentiary for life. The jury was unable to agree on the punishment.

On appeal here, he assigns and argues three allegedly prejudicial errors committed by the trial court, which we deem worthy of discussion. One, that he should have had a peremptory instruction at the end of the State's evidence, or, at the conclusion of all of the testimony; another, granting certain instructions to the State, and refusing others he requested; and objections to some of the testimony. We find no merit in these contentions.

The facts, briefly, are that about 9:30 A. M. of the second Sunday in May 1948, several negroes, including appellant, and Richard Lang, were gathered in the home of Eddie Gillam, when Richard Lang offended the ap-

pellant's amour propre, who attempted to assault the former with a walking stick. This stick was taken from appellant by Richard Lang, whom he afterwards killed. Appellant went to his own home not so far away, where he began preparing shells for his shotgun, so that, upon firing, the shot would not scatter. While he was so engaged, a messenger from Eddie Gillam arrived and urged him not to return to Gillam's house. His wife, and another woman, also urged him not to do so, and all tried to persuade him not to go back armed. He insisted he intended no harm to anyone, but had a right to return and to arm himself for his self-defense, and stubbornly rejected all pleas. However, he substituted his twenty-two rifle for the shotgun. Consequently, at half-past one of the same day, he left his home on his journey back to Gillam's house, from which the deceased, Richard Lang, had departed earlier with the intention of returning later, upon a perfectly lawful mission. Appellent at first contended that he went rabbit hunting, but later admitted he went to and fired into Gillam's home, where, all reasonable inferences from the evidence demonstrate, he considered Lang still to be present among those whom he claimed he desired to "scatter," by such otherwise motiveless shooting into the home of a friendly acquaintance. He had no quarrel with anyone there except Richard Lang, the victim of the homicide.

Following this episode, appellant reentered Gillam's home. Lang was absent. But, appellant sat around there with the rifle until later in the afternoon when Lang and a companion drove an automobile into the yard of the residence. When this happened, appellant immediately stepped to the front door, drew deliberate aim, and shot the deceased through the eye, killing him instantly. Lang was doing nothing to him whatsoever, had never threatened him, and was unarmed, and even unaware of his presence. All of the witnesses for the State agreed as to these matters, and all persons present

were introduced ;on behalf of the State, except one woman, and, of course, the appellant. The woman, who appeared as a witness for the defense, contradicted appellant as to some of his statements, and testified to nothing in his favor.

The appellant, in his own behalf, testified that Lang, the deceased, had drawn a pistol in the morning embroglio, and was in the act of attempting to draw a bead on him with a pistol in the afternoon culmination, so that he, appellant, shot in his own self-defense. He also claimed that threats made against him justified him in defending himself. He alone so testified. The companion of Lang, in the car at the time of the fatal shooting, testified that deceased was unarmed, and never drew any pistol or other gun. Other eye-witnesses corroborated him.

From the foregoing summary of the evidence, it will be seen that the trial court was correct in overruling appellant's motions for a peremptory instruction and directed verdict, on the facts. We so hold, and also that the verdict of "guilty" returned by the jury was the only one which the testimony justified.

Objection was made to evidence of the original events at Gillam's home in the morning; and to the shooting into his house in the afternoon. The former, on the ground that it was irrelevant; and the latter because it involved another and separate offense, and was, therefore, incompetent. ██ All of the events formed a continuous and inseparable sequence culminating in the ultimate murder of deceased. The testimony furthermore was competent to reveal motive and establish malice, or deliberation in the homicide. Section 2215, Sub-section (a), Code 1942. ██ The rule applicable here is that evidence of other crimes is incompetent except to show identity, guilty knowledge, intent or motive, or where the offense charged is so interwoven with other offenses that they cannot be separated. Collier v. State, 106 Miss. 613, 64 So. 373. See also Clark v. State, 181

Miss. 455, 180 So. 602; Massey v. State, Miss., 19 So. (2d) 476; and Bangren v. State, 198 Miss. 359, 22 So. (2d) 360. The evidence was relevant and competent.

██ ██ Complaint is made that the conventional instruction as to verdicts and punishments upon conviction of murder, which did not also contain an instruction on manslaughter, was improper, because it limited the jury to murder or acquittal. Among others, perhaps, there are two answers to this argument which at once present themselves in the record of this case. First, in it there is no evidence even suggesting manslaughter. Second, the appellant was granted this instruction: "The court instructs the jury for the defendant; that unless you believe from the evidence in this case, beyond every reasonable doubt and to a moral certainty, that the defendant did, wilfully, unlawfully, feloniously and of his malice aforethought kill and murder the deceased, in manner and form, as charged in the indictment, then it is your sworn duty to find the defendant not guilty." ██ ██ This instruction, asked by and granted the appellant, obviously limits the jury to a verdict of guilty of murder, or acquittal. The State properly refrained from asking the court for an instruction on manslaughter, and the appellant did not ask such an instruction, and had he done so, would not have been entitled to it. Section 1530, Code 1942, governs the method of obtaining instructions.

Complaint is made, also, by appellant that he was denied another instruction, to which there were so many reasons for rejecting it, we deem it profitless to set it out in this opinion. ██ ██ Moreover, other instructions granted appellant embraced therein everything that was at all valid in this one refused. Futhermore, appellant was treated more than fairly by the instructions granted him by the lower court, numerous as they were, and some of them more favorable to him than was his right under the law. We find no merit in appellant's assignment of errors as to the instructions in the case.

The judgment of the trial court is affirmed.

Affirmed.