### BLAND *v.* STATE.

Feb. 23, 1953

No. 38589      21 Adv. S. 1      63 So. 2d 42

*Nichols & Huff,* for appellant.

*Geo. H. Ethridge,* Assistant Attorney General, for appellee.

KYLE, J.

The appellant, George Bland, was convicted in the circuit court of Scott County on a charge of assault and battery with intent to kill and murder one O. C. Smith, and was sentenced to imprisonment in the state penitentiary for a term of ten years. From that judgment he prosecutes this appeal.

The shooting occurred in the Negro section of the City of Forest about the middle of the afternoon of the first Sunday in September, 1951. According to the testimony of Lilla Caples, the mother of O. C. Smith, the appellant came to Lilla's house about 3:00 o'clock in the afternoon and called for O. C. Smith, who was living in the house with his mother. O. C. went to the door, and while he was standing in the door with one hand on the side of the door and was holding the screen with the other hand the appellant shot him in the face. Lilla stated that O. C. had no weapon of any kind in his hand at the time he was shot. The doctor who examined the injured man, testified that both eyes were affected by the gunshots, and that in his opinion O. C. would be completely blind in one eye, except that he might be able to tell the difference between light and darkness. The night marshal of the City of Forest testified that he arrested the appellant in the appellant's front yard, about 100 yards north of Lilla Caples' house, soon after the shooting; that the appellant had a single barrel shotgun which he delivered to the officer when he was arrested. The appellant also delivered to the officer three shells that he had in his pocket. The night marshal asked the appellant, "What is going on down here?" and the appellant replied: "I tried to shoot his damn eyes out—I don't know whether I did or not."

The officer stated that he saw O. C. Smith later lying on the bed at his mother's house, that he had been shot in the face, and that his eyes were puffed out.

O. C. Smith himself testified that when the appellant called him he went to the door, but did not see the appellant immediately; that he then looked northwardly and saw the appellant standing by a chinaberry tree, about 15 feet from the porch; that the appellant shot him while he was standing in the door that opened on the porch; and that at the time he was shot he had one hand on the screen and the other hand on the door facing; that he had no weapon of any kind in his possession. Smith stated that he was carried to the doctor soon after he was shot, and then to the hospital at Jackson, where he was a patient for six weeks. On cross-examination he denied that he had tried to get Essie Mae Bland, the appellant's wife, to go away with him while he was at her house during the forenoon of the day of the shooting. He admitted that he had struck Essie Mae on the head with a pitcher a few days before the shooting and that sometime before that he had broken her arm; but he claimed that Essie Mae had cursed him when he broke her arm.

Ophelia Epting testified that her house was located about 40 feet from Lilla Caples' house, and that she saw the appellant in the edge of her yard just before the shooting occurred; that the appellant had a gun; and that she begged him not to go over to O. C.'s house. She stated that the appellant said to her, "While I got this gun I ought to get rid of the whole push." She stated that the appellant called O. C. from the corner of the yard, and that when O. C. came to the door the appellant raised his gun and shot him. Mary Johnson, who lived across the road from Lilla Caples' house, testified that she saw the shooting, and her testimony corroborated the testimony of Lilla Caples and Mary Johnson.

Several witnesses were called to testify for the appellant. Reuben Jennings testified that O. C. Smith came

to the appellant's house Sunday morning and called for Essie Mae Bland, the appellant's wife, but that Essie Mae did not come out of the house; that O. C. said, as he got in his car, "When I come back I am going in there." The appellant was not at home at the time. Essie Mae Bland testified that she had had trouble with O. C. Smith a short time before the shooting occurred; that he had broken her arm on one occasion; and that he had broken a water pitcher over her head at another time. She stated that O. C. came to her house Sunday morning, when the appellant was away from home, and started into the house; that he had a long knife; that she told him that she was "going to tell George on him;" and that O. C. said, "I will see you and George, I will be back." She stated that O. C. had tried to get her to go off with him before. She stated that after the appellant came home Sunday about noon the appellant said to her, "I am going to talk to O. C.," and that about 3:00 o'clock the appellant got his gun and went to O. C.'s house; that she did not see the shooting. Tipp Arinder testified that he ran a cafe and grocery store and that Essie Mae Bland worked for him; that he knew of two attacks that O. C. had made on Essie Mae; that he hit her over the head with a pitcher one afternoon in the cafe; and that on another occasion he saw O. C. cut her with a knife as she went in the front door at Ophelia Epting's house.

Eddie Smith, who was a nephew of the appellant, testified that he was at the appellant's house about 12:00 or 1:00 o'clock on the day of the shooting, and that he went with the appellant to Ophelia Epting's house; that the appellant called O. C. from the corner of the yard, and that O. C. came out on the porch and cursed the appellant and said: "If you raise your hand, I will shoot your g—— d—— eyes out," and put his hand in his bosom; and that the appellant shot him. The witness stated that O. C. came out with a pistol, and that after the appellant shot him O. C. ran back into the house. Henry

Lee Smith, who was also a nephew of the appellant, testified that he was standing by the hydrant near Ophelia's house when the shooting occurred; that the appellant called O. C. out of his house; and told him that he wanted to talk to him; that O. C. came out and said, ''If you raise your hands I will blow your eyes out.''

The appellant, testifying in his own behalf, said that O. C. had been giving him trouble about his wife; that he tried to talk to O. C., and that O. C. threatened to cut his head off; that O. C. had broken his wife's arm, while the appellant was away from home; and that on another occasion O. C. had struck his wife on the head with a stick of stovewood; that on Thursday before the shooting occurred O. C. had struck his wife with a water pitcher, while the appellant was at the trade school. The appellant testified further that during the morning of the day of the shooting the appellant got a truck for the purpose of hauling a load of pine, and that while he was away from home O. C. came to his house again; that when he heard about it after he had returned to his home, he picked up his gun and went over to O. C.'s house and told him that he wanted to talk to him; that O. C. came to the side of the porch and said, ''I ain't got any d_____ talk for you,'' and put his hand in his bosom; and that the appellant shot him.

On cross-examination the appellant admitted that after he came back to the house about noon on the day of the shooting he talked to his wife, and got his gun and three shells and went across to Ophelia's yard. He denied that Ophelia tried to stop him, and said that he didn't see her. He said that he went to O. C.'s house to try to get him to agree to stay away from his house.

The appellant's attorney argues two points as grounds for reversal on this appeal, (1) that the lower court erred in granting the instruction for the State, and (2) that the evidence was insufficient to support the finding of the jury that the appellant's purpose was to kill and murder O. C. Smith.

The State requested and received only one instruction, and that instruction authorized the jury to convict the appellant if the jury believed from the evidence beyond a reasonable doubt that the appellant "did willfully, unlawfully and feloniously shoot and wound O. C. Smith with a shotgun, which the jury believes was a deadly weapon, intending to kill and murder him, as charged in the indictment." The appellant's attorneys contend that the court erred in granting the above mentioned instruction without also granting an instruction authorizing the jury to convict the appellant of mere simple assault in the event the jury should find that the assault was committed without intent to kill and murder.

But there is no merit in this contention for two reasons: (1) That the issue presented to the jury by the conflicting testimony was whether the appellant shot O. C. Smith with intent to kill and murder, as testified to by the State witnesses, or in necessary self-defense, as testified to by the appellant and his two nephews, Eddie Smith and Henry Lee Smith; and (2) that no request was made by either party for an instruction embodying the theory of simple assault.

There is no evidence in the record to support the contention made by the appellant in his brief that the jury would have been warranted in finding the appellant guilty of a simple assault only. According to the testimony of the State witnesses the appellant armed himself with a single barrel shotgun and went to the house occupied by O. C. Smith, called O. C. Smith out of the house and deliberately shot him, at a time when the appellant was in no danger, real or apparent, of losing his life or suffering great bodily harm at the hands of O. C. Smith. According to the testimony of the appellant and his two nephews, the appellant shot O. C. Smith after O. C. Smith had cursed the appellant and had put his hand in his bosom, as if he were about to draw a deadly weapon. The appellant himself requested, and the court granted to him, an instruction

which limited the jury to a finding of guilty as charged in the indictment, or an acquittal. Neither the State nor the appellant asked for an instruction authorizing the conviction of a simple assault; and it was not the duty of the trial judge to grant an instruction not requested by either party. Section 1530, Code of 1942: Smith v. State, 205 Miss. 283, 38 So. 2d 725; May v. State, 205 Miss. 295, 38 So. 2d 726.

Nor is there any merit in the appellant's contention that the evidence was insufficient to support the finding of the jury that the appellant's purpose was to kill and murder. The testimony of the State witnesses, which the jurors accepted, was sufficient to support the verdict. The circumstances under which the assault was made, as testified to by the State witnesses, the use of the deadly weapon, and the account of the shooting which the appellant himself gave to the officer, constituted sufficient proof of the appellant's intent to kill.

We find no error in the record and the judgment of the lower court is affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Holmes* and *Lotterhos, JJ.,* concur.