301 So.2d 300 (1974)
Sylvester YOUNGER
v.
STATE of Mississippi.
No. 48003.
Supreme Court of Mississippi.
October 7, 1974.
Rehearing Denied October 28, 1974.
*302 Constance Iona Slaughter, Forest, for appellant.
A.F. Summer, Atty. Gen., by William D. Boerner, Sp. Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice:
Appellant Sylvester Younger was indicted, tried and convicted in the Circuit Court of Scott County for using obscene, indecent language over the telephone in violation of Section 2291.5, Mississippi Code 1942 Annotated (Supp. 1972) [Section 97-29-45, Miss.Code Annot. (1972)]. Appellant was sentenced to serve a term of two years in the State Penitentiary. From this conviction and sentence he appeals. We affirm.
The uncontradicted facts in this case reveal for several weeks prior to September 22, 1973, Mrs. Ellen Thrash, a resident of Morton, had been receiving obscene telephone calls. Shortly after she started receiving these calls she complained to the telephone company. The telephone company directed that she keep a log of the calls and report them. This she did, and when the calls persisted, the security department of the telephone company authorized the placement of a holding device, commonly referred to as a trap, on the line leading to the residence of Mrs. Thrash. This device allowed Mrs. Thrash complete control over all calls she received in that by not hanging up the receiver of her telephone, she could maintain connection between her telephone and the caller regardless of what the caller did. The caller could not make another call until the connection was broken by Mrs. Thrash hanging up the receiver on her telephone. Mrs. Thrash was directed by the company to leave her receiver off the hook when she received another obscene call and notify the company over another telephone so that the call could be traced.
At about 3:00 a.m. on September 23, 1973, the telephone in the home of Mrs. Thrash rang. She answered the call and speaking softly in a sort of a whisper the caller said:
... [T]his is a black man. Don't hang up. Don't be afraid. I want to fuck you. Will you meet me somewhere? Do you want to fuck me?
Mrs. Thrash made no response and placed the receiver under her pillow and went back to sleep. The next morning the telephone company was informed of what happened. The company had two of its employees to trace out the line to determine the telephone which was still connected to Mrs. Thrash's telephone. The trace revealed that the telephone connected to the Thrash telephone was listed in the name of Mrs. Sara Younger, the mother of appellant.
At this point John Coleman, an investigator for the Mississippi Highway Patrol, was advised of what had happened. Coleman contacted Mr. Lauris Sessums, the city marshal of Morton, and asked him to go to the Younger home and pick up the telephone and begin talking. Coleman then went to the Thrash home. The receiver of the Thrash telephone was still off the hook, and Coleman picked it up and listened. When Sessums reached the Younger residence he received permission from Mrs. Younger to use the telephone. He picked up the receiver and talked with Coleman. Sessums noticed that the telephone was in a room which appeared to be occupied by a man. Mrs. Younger told him that the only other person who lived in the home was her son, Sylvester Younger, and that he was the last person to use the telephone.
*303 Appellant was arrested and after being warned of his Miranda rights made a statement in which he admitted he had been calling telephone numbers at random and when he reached home that morning at about 3:00 a.m. he had called a number that turned out to be the Thrash number.
Appellant assigns several grounds for the reversal of his conviction, but we will only discuss the errors assigned that merit discussion.
It is contended that the trial court was in error in denying appellant's motion to suppress the confession that was introduced in evidence. Appellant was the only witness who testified in support of his motion to suppress. He testified that no one informed him of his Miranda rights, although he admitted that he was given a card which had his rights printed on it. He admitted that he read the card but said that he did not understand it, although he was twenty-six years of age and a high school graduate. Appellant also testified that when he was brought to the sheriff's office, by Investigator Coleman, an officer who was sitting behind the desk in the outer office told him that he ought to be whipped, and he signed the statement because he was afraid. He also said that Coleman told him that it would be better for him if he told the truth.
On cross examination appellant admitted that Coleman never threatened him in any way and never used any force to induce him to make the statement. He admitted that he signed the statement on his own.
John Coleman, the only officer present at the interrogation, testified that he picked up appellant at the jail in Morton and brought him to the sheriff's office in Forest. When they arrived at the sheriff's office the only person in the sheriff's office was a person referred to as Judge Glaze and that he and appellant went immediately into a small office where the interrogation was held. Coleman handed appellant a card containing the Miranda rights and told him to read it. Coleman then left the room and returned to his car in order to obtain an interview sheet. He returned in a few minutes and then informed appellant of his rights which appellant said he understood.
Coleman then asked appellant if he wanted to tell him about the telephone calls he had been making and advised him to tell the truth but denied that he told him it would be better if he told the truth. Coleman said that appellant then told him that he had been making telephone calls for some five or six weeks. These telephone calls were to numbers that he selected at random and if a man answered the telephone he would hang up. He said he made a telephone call about 3:00 a.m. that morning. He said he did not know why he had been making these calls. Coleman then reduced the statement to writing and read the statement to appellant. He then handed the statement to appellant and at Coleman's request appellant wrote at the bottom of the statement the words, "I have read this statement an [sic] it is true to the best of my acknowledgement." Coleman did not know whether appellant ever read the statement, but after writing the above words, appellant did sign the statement.
On cross examination Coleman admitted that appellant did not use the name of Mrs. Ellen Thrash that appeared in the written statement but did admit making a telephone call about 3:00 a.m.
Upon examination by the court Coleman testified that after appellant was advised of his rights he never requested a lawyer and that no threats, coercion or promises were made. The court then overruled the motion to suppress the confession.
At the trial of the case on the merits, and before the statement of appellant was introduced in evidence, a preliminary hearing was had out of the presence of the jury. The state then developed the same testimony by Officer Coleman. Appellant offered no further testimony. The court ruled that the confession was freely and *304 voluntarily given without any duress, force, persuasion, leniency or hope of reward and that it was admissible in evidence. Before the statement was introduced in evidence Coleman again testified to the same facts relative to the taking of the confession before the jury. Before the statement was introduced in evidence the court required the state to eliminate from the confession any reference to previous telephone calls.
On cross examination Coleman again admitted that appellant never mentioned the name of Mrs. Ellen Thrash but just told him that he made a call about 3:00 a.m.
Appellant contends that the evidence on behalf of the state is insufficient to show that the confession was voluntary beyond a reasonable doubt. We find no merit in this contention. The trial judge after hearing and considering the conflict in the evidence found that the confession was voluntary beyond a reasonable doubt. We are of the opinion that he was justified in so finding.
It is also argued that the state failed to comply with the rule announced in Agee v. State, 185 So.2d 671 (Miss. 1966), to the effect that when the accused offers testimony of threats or violence or offers of reward, the state must offer all the officers present when the accused is questioned or give adequate reason for their absence. It is argued that the state should have called the officer that appellant said told him that he ought to be whipped. Testimony on behalf of the state revealed that the only person present in the sheriff's office when appellant was brought in was a person referred to as Judge Glaze and not an officer. The state did offer the only officer who was present when appellant was questioned and according to his testimony no threats of any kind were ever made to appellant. Thus, the rule announced in Agee was complied with.
Appellant also contends that it was error for the court to allow the confession to be introduced in evidence because it contains a statement that the appellant called the number of Mrs. Ellen Thrash. We find no merit in this contention. This matter was fully explained to the jury and we are unable to see how appellant was prejudiced thereby. Appellant never at any time denied that he made the call that turned out to be the call to Mrs. Thrash's number.
The only other error assigned that merits any discussion is that the trial court committed reversible error in allowing over appellant's objection testimony of other obscene calls received by Mrs. Thrash. On direct examination Mrs. Thrash testified that she started receiving calls in June that she considered to be obscene. When asked if she received any calls during the month of July, appellant objected to any telephone calls that were not alleged in the indictment. The court sustained this objection. Mrs. Thrash then testified that she reported to the telephone company that she had been receiving obscene calls and that they told her to keep a log of the calls and if they persisted to report them. She testified that she kept a record of the calls, showing the date and time of day that the calls were made. Over the objection of appellant, she was allowed to give the date and time of day she received calls. She testified that she reported these calls to the telephone company and on September 2, 1973, the telephone company instructed her that the next time she received a call to leave the receiver off the hook and notify the company over another telephone. She testified relative to the calls she received at 3:00 a.m. on September 22 and said that she felt that the voice was that of a black man.
On cross examination Mrs. Thrash was questioned relative to why she felt that the voice was that of a black man. She was also asked whom she notified about the calls she had received prior to September 22, and she said she notified the telephone company and John Coleman. Counsel for appellant then cross examined her about *305 the log which she kept of the calls and why the call of September 22 was not listed on the log.
Upon redirect Mrs. Thrash testified over the objection of the appellant that the voice of the person who made the calls that she received prior to September 22 was the same as the voice of the person who called her on September 22, and it was her opinion that the same man made all the calls.
Appellant then out of the presence of the jury made a motion for a mistrial for the reason that the state had been permitted over the objection of the appellant to inquire into other calls that were separate offenses and not referred to in the indictment. The trial court in overruling the motion stated that the testimony relative to the previous calls was a necessary link to the circumstances leading up to the indictment.
It is a general rule in this state that proof of other crimes, separate and distinct from the one charged, are not admissible except to show identity, guilty knowledge, intent or motive or where the offense charged is so interwoven with other offenses, that it cannot be separated. May v. State, 205 Miss. 295, 38 So.2d 726 (1949).
We are of the opinion that the testimony of Mrs. Thrash that she had received other obscene calls was admissible to explain why a holding device was placed on her telephone by the telephone company. However, it was error for the trial court to allow Mrs. Thrash to testify on redirect examination over the objection of appellant that the voice of the person making the previous calls was the same as the one who made the call on September 22, 1973. However, under the facts and circumstances of this case, the error was harmless beyond a reasonable doubt. The evidence in this case relative to the guilt of the accused is such that no other verdict than that reached by the jury could be expected. Miss. Supreme Court Rule 11 (1967).
We have carefully examined the other errors assigned and find them to be without merit. The jury after being properly instructed as to the law found from the evidence beyond a reasonable doubt that the appellant made the telephone call charged and that the words used were obscene. A review of the evidence convinces us that a fair-minded jury could have reached no other verdict. Therefore, this case must be and is affirmed.
Affirmed.
RODGERS, P.J., and PATTERSON, WALKER and BROOM, JJ., concur.