418 So.2d 794 (1982)
Roscoe ROBINSON
v.
STATE of Mississippi.
No. 53588.
Supreme Court of Mississippi.
August 11, 1982.
Rehearing Denied September 8, 1982.
H. David Clark, II, Forest, for appellant.
*795 Bill Allain, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and BOWLING and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Scott County wherein Roscoe Robinson, defendant/appellant, was indicted, tried and convicted for the December 6, 1980, willful, unlawful and felonious murder of Ernest Grayson with malice aforethought. Upon conviction, Robinson was sentenced to a term of life imprisonment in the Mississippi State Penitentiary. Robinson appeals from the verdict of the jury adjudging him guilty of the crime for which he was charged. We affirm.
On December 6, 1980, around noon, Ernest Grayson was shot and killed in front of the Oakdale Apartment Complex in Forest, Mississippi. Just prior to the shooting, appellant and Grayson were engaged in an argument. Appellant was heard to say, "Nigger, I'm going to kill you," whereupon Grayson responded he was not scared of appellant and he (appellant) had better go on and leave him alone.
While the argument was in progress, appellant was standing in the opening of a breezeway to an apartment building. Grayson was leaning against a brick post. Robert Kyzar was sitting near the opening of the breezeway; however, he died before the cause came to trial. Billy Bishop, Linda Bishop, Loni Boykin and James Boykin were leaving the apartment building while appellant and Grayson were arguing.
Appellant disappeared into the breezeway, off of which his apartment was located, and then returned to the entry of the breezeway. After the first shot was fired, Billy Bishop, Linda Bishop and Loni Boykin directed their attention toward the apartments. Their view of appellant's hands was obstructed by a brick post. However, each asserted appellant's arm was extended toward Grayson. Loni Boykin asserted she saw appellant's arm moving behind the brick post and smoke emerging therefrom. James Boykin testified he saw a gun in appellant's right hand. Grayson and Kyzar ran upon the firing of the first shot. None of the witnesses saw Grayson with a weapon or make any type of advance toward appellant.
The jury returned a verdict of guilty as charged and appellant received a life sentence.

I. Was the verdict of the jury against the overwhelming weight of the evidence?
Appellant contends the evidence presented in the present case was insufficient to support the verdict of the jury, primarily because the only witness who testified he saw appellant with a gun was James Boykin, who allegedly testified in appellant's first trial that he had not seen a gun.
A conviction may be had on circumstantial evidence alone. Tolbert v. State, 407 So.2d 815 (Miss. 1981). Disregarding the direct evidence of James Boykin, the state's evidence established appellant threatened to kill Grayson, then disappeared into the apartment breezeway, shortly returned to the scene of the argument where shots were heard. Both Grayson and Kyzar ran while appellant stood with his arms extended forward pointing toward Grayson. Smoke was seen in the vicinity of the brick post which hid appellant's hands from view of the witnesses. Appellant then disappeared into the breezeway and returned shortly thereafter.
Appellant asserts the record is totally devoid of any evidence that appellant willfully, unlawfully and feloniously with malice aforethought murdered Grayson. Appellant evidently overlooks the argument that ensued between himself and Grayson only minutes before the shooting wherein appellant stated he was going to kill Grayson. This evidence was competent to reveal motive and establish malice or deliberation in the homicide. See May v. State, 205 Miss. 295, 38 So.2d 726 (1949).
Appellant also contends James Boykin impeached his own testimony and readily *796 admitted he was confused about what he had seen and previously testified to in appellant's previous trial. On direct examination, Boykin testified he saw a gun in appellant's hand. On cross-examination, Boykin first denied his present testimony conflicted with his earlier testimony, but then he asserted he really could not remember. On redirect, Boykin asserted he was confused about what he testified to at appellant's previous trial, not what happened on the day Grayson was shot.
An examination of the record fails to support appellant's contention that Boykin impeached his own testimony. At most, the record reveals Boykin was confused about what he testified to in appellant's previous trial. Had appellant desired to impeach Boykin's testimony about seeing a gun on the day in question, he should have obtained a transcript of the former proceedings. Otherwise, there is no way for this Court to know what his previous testimony was.
In Sadler v. State, 407 So.2d 95 (Miss. 1981), this Court stated:
Among the alleged errors assigned is that the trial court should have sustained Sadler's motion for a new trial on the ground that the jury verdict was not supported by sufficient credible evidence.
Considering the evidence, as we must, in the light most favorable to the state and accepting as true the evidence supporting or tending to support the verdict, with all inferences supportive of the verdict that reasonably may be drawn therefrom, we find no merit in this contention. Glass v. State, 278 So.2d 384 (Miss. 1973). In Spikes v. State, 302 So.2d 250 (Miss. 1974), this Court said:
"On appeal, in this situation, in passing upon the sufficiency of evidence to support a verdict, this Court must accept as true the evidence which supports the verdict. Murphree v. State, 228 So.2d 599 (Miss. 1969). [302 So.2d at 251]." (407 So.2d at 97)
Accepting the evidence pursuant to the foregoing rule, the evidence was sufficient to support the verdict of the jury.

II. Did the trial court err in failing to quash the special venire upon motion of the appellant?
Appellant filed a motion for special venire facias which was sustained by the trial judge. Forty additional jurors were summoned; however, only twenty-three jurors appeared. Five of the twenty-three jurors summoned were excused by the trial judge. Appellant moved to quash the special venire on the ground that the special venire amounted to no venire at all from which appellant could select a jury.
Smith v. State, 242 Miss. 728, 137 So.2d 172 (1962), is dispositive of the issue. There the trial court ordered, upon Smith's request, the summoning of a special venire of forty jurors. Only eighteen appeared. The court excused three for cause and after challenges by the parties of others, only six jurors remained from the original venire. Smith moved to quash the special venire because only eleven out of the forty called were available. In upholding the trial court's action in overruling Smith's motion to quash, this Court stated:
Code Sec. 1795 provides that after the venire is exhausted the trial court shall make up the jury "from the regular panel and tales jurors who may have been summoned for the day." This was what the court did. There is no evidence to show appellant was prejudiced by this procedure, or the jury was not impartial. In Walford v. State, 106 Miss. 19, 63 So. 316 (1913), under somewhat similar facts, it was said: "The sheriff failed to summon forty jurors, and therefore to that extent failed to obey the order of the court; but under section 2718 this provision of the jury law is directory merely. Since there is no hint in the record that an impartial jury was not obtained, appellant suffered no harm by reason of the fact that the sheriff only summoned thirty men, and cannot complain thereof."
A special venire will not be quashed except for fraud or total departure from the procedure laid down by statute. Here there was no total departure nor any suggestion of fraud. Riley v. State, *797 208 Miss. 336, 44 So.2d 455 (1950). See also Harrison v. State, 168 Miss. 699, 152 So. 494 (1934); Williams v. State, 26 So.2d 64 (Miss. 1946); Code Sec. 1796. The provisions of the law in relation to the listing, drawing, summoning and empaneling juries are directory. Code Sec. 1798.
(242 Miss. at 733, 137 So.2d at 173)
Since there is no evidence to show appellant was prejudiced by this procedure or the jury was not impartial, this assignment of error is without merit.

III. Was appellant entitled to a manslaughter instruction?
Appellant contends he should have been granted a manslaughter instruction because none of the witnesses knew of the nature or cause of the argument between appellant and Grayson.
Although the substance of the argument between Grayson and appellant was unknown, the state's evidence established a prima facie case of murder. In Gaddis v. State, 207 Miss. 508, 42 So.2d 724 (1949), this Court stated:
Words of reproach, criticism or anger do not constitute sufficient provocation to reduce an intentional and unjustifiable homicide from murder to manslaughter. Richardson v. State, 123 Miss. 232, 85 So. 186; Williams v. State, Miss., 26 So.2d 174; McLaurin v. State, 205 Miss. 554, 37 So.2d 8.
(207 Miss. at 515-16, 42 So.2d at 726)
Appellant offered no evidence in his own defense. There was absolutely no evidence before the jury that the shooting of Grayson was a result of heat of passion. Therefore, the manslaughter instruction tendered by appellant was properly refused as not being supported by the evidence. Norman v. State, 385 So.2d 1298 (Miss. 1980).

IV. Did the trial court err in further instructing the jury after the trial court was informed that the jury had been unable to reach a verdict?
The jury retired to deliberate at 3:17 p.m.; at 6:35 p.m., the trial court was informed the jury had not been able to reach a verdict. The trial court inquired as to the numerical division of the jury, whereupon it was informed the vote had been ten to two for the last hour and twenty minutes. The trial judge then polled each juror as to his or her opinion on whether the jury could agree on a verdict if given more time to deliberate. One juror expressed he did not know, two jurors thought they could and nine jurors did not think a verdict could be reached. The jury was recessed for supper and when it returned at 8:30 p.m., the trial judge gave an additional instruction. At 9:37 p.m. the jury returned a verdict of guilty as charged.
The additional instruction given by the trial judge was in accordance with this Court's decision in Sharplin v. State, 330 So.2d 591 (Miss. 1976). See also Banks v. State, 394 So.2d 875 (Miss. 1981); Jordan v. State, 365 So.2d 1198 (Miss. 1978); and Parr v. State, 362 So.2d 634 (Miss. 1978). Rule 5.14 of the Uniform Criminal Rules of Circuit Court Practice provides in part:
If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give an appropriate instruction. The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.
The jury deliberated approximately four hours before arriving at its verdict. During this period the trial judge recessed the jurors for dinner. We are of the opinion that the trial judge did not err in requiring further deliberation by the jury, especially after the jury was allowed to recess for dinner.
Based on the foregoing, appellant's conviction and sentence are hereby affirmed.
AFFIRMED.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and BROOM, BOWLING, HAWKINS and PRATHER, JJ., concur.
ROY NOBLE LEE, J., took no part.