527 So.2d 654 (1988)
Robert Lee JACKSON
v.
STATE of Mississippi.
No. 57674.
Supreme Court of Mississippi.
May 18, 1988.
Rehearing Denied July 20, 1988.
*655 Ralph H. Doxey, Doxey & Jones, Holly Springs, Thomas J. Lowe, Jr., Jackson, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen., by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and GRIFFIN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Robert Lee Jackson was indicted, tried and convicted in the Circuit Court of Marshall County, Mississippi, for the murder of his wife, Helen Jackson, and was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. He has appealed from the judgment and sentence and has assigned four (4) errors in the trial below.

Facts
Appellant and Helen Jackson, were separated in March, but in early May of that year, they were reunited and resumed cohabitation. Jessica Pierson, the ten-year-old daughter of Helen Jackson and step-daughter of appellant, lived with them in Slayden, Mississippi, at the time of Helen Jackson's death.
On May 24, 1984, at approximately 5 a.m., Helen Jackson was shot and killed while in the home of the parties. The cause of death was a single gunshot wound at close range from a.22-caliber Magnum handgun, the bullet entering the left side of her chest and piercing through her body. The only witness to the homicide was the appellant. The State presented seven (7) witnesses to establish its case.
Osborne Bell, Marshall County Sheriff, testified he arrived upon the scene, after receiving a call, at approximately 5:50 a.m., May 24, 1984. The appellant told him that his wife had committed suicide. Sheriff Bell found the victim's nude body in the kitchen of the house. She was dead, obviously from a bullet wound to the left chest. According to Sheriff Bell, there was little or no blood in the kitchen. He inspected the remainder of the house and found a .22-caliber pistol on the floor of the master bedroom, as well as drugs and drug-related paraphernalia. That bedroom was in complete disarray and there were thirty (30) or more bloody pieces of tissue paper, photographs, letters, an ashtray, a gun holster, cocaine, marijuana and drug-related paraphernalia strewn about the bed and the floor of the bedroom. Appellant told Sheriff Bell that his wife held the .22-caliber pistol in both hands and shot herself in the chest. He told the sheriff positively that his wife shot herself and collapsed just inside of the master bedroom door leading to the hallway and that he had dragged her body into the kitchen with the intention of taking her to his automobile, thence to the hospital for emergency treatment.
Creekmore Wright, a criminal investigator with the Mississippi Highway Patrol, arrived at the Jackson residence at approximately 8:30 a.m. The victim's body had been removed, but he inspected the house and corroborated the testimony of Sheriff Bell. Wright also located and photographed a .22-caliber Magnum pistol in the master bedroom. The pistol contained five (5) live cartridge rounds and one (1) spent round. After learning that the projectile had cleared the victim's body, Wright conducted a minute inspection of the walls of the house and located a.22-Magnum projectile in the master bathroom wall, just above the lavatory. That projectile was identified as having been fired from the Magnum pistol and caused the death of Helen Jackson. Wright also found torn pieces of yellow sheet paper on the dresser in the master bedroom, which he pieced together and was able to read.
The writing on the paper was identified by a handwriting expert as that of the victim.
Investigator Wright was present at approximately 6:15 p.m. on May 24, 1984, when the appellant gave a statement to Sheriff Bell. Appellant stated that his wife *656 held the pistol in both hands and, as he tried to wrestle the pistol away from her, it discharged. The appellant positively stated that the shooting occurred just inside of the master bedroom door leading to the hallway.
According to Wright appellant's version of Helen Jackson's suicide was not borne out by the physical facts he observed at the scene soon after the shooting. He testified further that Helen Jackson's right forearm was powder burned, similar to the markings around the entrance wound in her chest.
Dr. Michael Todd, a pathologist, established that Helen Jackson died from the gunshot wound to the left side of her chest; that the gunpowder residue surrounding the entrance wound indicated that the shot was fired from very close range  within one-half (1/2) of an inch or with the pistol touching the flesh; that the entrance wound in Helen Jackson's chest was approximately one and one-half (1 1/2) inches higher than the exit wound in her back.
Steve Byrd, a firearms expert with the Mississippi Crime Laboratory, testified that the projectile recovered from the master bathroom wall was fired from the .22-caliber pistol found in the master bedroom and that the mark on the right forearm of the victim contained lead residue, similar to that on the chest wound.
Appellant testified on his own behalf that at approximately 5 a.m. on May 24, 1984, he was awakened by his wife as she rummaged through the bedroom closet; that she was a drug user and he suspected she was searching for drugs; that he took a blue Kleenex box from Helen and dumped the drugs and related paraphernalia therein out onto the bed; that when he looked up, his wife was walking toward the bathroom with his .22-caliber pistol in her right hand; that she grabbed the pistol with both hands and pointed it at her chest; that he lunged toward her in an attempt to get the gun and it fired. His testimony as to the position of Helen Jackson when the gun fired differed from his previous positive statements that she was in the bedroom door leading into the hall when the gun fired. If she had been at the point, as he previously stated before the projectile was found in the bathroom, it would have been impossible for the projectile to have struck the bathroom wall above the wash basin.

Law

I.

THE LOWER COURT ERRED IN ADMITTING THE VICTIM'S HANDWRITTEN NOTE INTO EVIDENCE.
The appellant objected to the introduction of the torn yellow sheet of paper which had been put back together by Investigator Wright and which was identified as the handwriting of the victim. The note was dated March 10, 1984, and contained a list of things the decedent intended to do:
(1) Mental cruelty, etc... . (what I am filing for on divorce)
(2) I need a paper from the judge so I can get protection to get my personal things because he has threatened to kill me. He pulled a gun on me and said he would kill me and soon.
The appellant contended that the note should not have been admitted on grounds of hearsay, remoteness and immateriality. In Tolbert v. State, 407 So.2d 815, 821 (Miss. 1981), the Court said:
Where the fact that a particular statement was made is of itself a relevant fact, regardless of the truth or falsity of such statement, the statement is admissible in evidence as an independently relevant fact.
See also 31A C.J.S. Evidence § 239 (1964); McCormick, Evidence § 246 (2d ed. 1972).
The State argues that the note was introduced to show Helen Jackson's state of mind. Graves v. State, 492 So.2d 562, 565 (Miss. 1986); Gates v. State, 484 So.2d 1002, 1007-08 (Miss. 1986); Stringer v. State, 477 So.2d 1335, 1340 (Miss. 1985); Fuselier v. State, 468 So.2d 45, 52 (Miss. 1985); McGowan v. State, 375 So.2d 987, 989-90 (Miss. 1979).
This Court has held evidence of prior altercations or difficulties between a deceased and a defendant are competent and admissible to "reveal motive and establish *657 malice or deliberation in the homicide." Robinson v. State, 418 So.2d 794, 795 (Miss. 1982). See also Tolbert, supra, at 819; Gardner v. State, 368 So.2d 245, 248 (Miss. 1979); May v. State, 205 Miss. 295, 300, 38 So.2d 726, 728 (1949).
In overruling the objection to the note, the lower court said:
I do find that this statement [Jackson's handwritten note] does have certain guarantees and trustworthiness as it is evidence of state of mind of the victim in this case. Certainly, it's more probative on that point than any other evidence that the State could produce.
The assigned error I is rejected.

II.

THE LOWER COURT ERRED IN ADMITTING THE PHOTOGRAPHS OF THE VICTIM'S BODY INTO EVIDENCE.
The appellant contends that the court erred in admitting into evidence five photographs of the victim's body and argues that the photographs have no probative value and were inflammatory. We disagree. The photographs showed bruises upon the body, the wound caused by the bullet, the mark on the right forearm and the general condition of the body and marks upon it. The photographs contradicted the version in testimony of appellant.
The admission of photographs in evidence is within the sound discretion of the trial judge and does not constitute error unless there is an abuse of discretion so long as the photographs serve some useful evidentiary purpose and have probative value. Williams v. State, No. DP-56 (Miss. Oct. 7, 1987); Sims v. State, 512 So.2d 1256 (Miss. 1987); McFee v. State, 511 So.2d 130 (Miss. 1987); Koch v. State, 506 So.2d 269 (Miss. 1987); Watson v. State, 483 So.2d 1326 (Miss. 1986); Johnson v. State, 476 So.2d 1195 (Miss. 1985).
The assigned error II is rejected.

III.

THE LOWER COURT ERRED IN ADMITTING THE PHOTOGRAPH OF THE VICTIM WITH HER DAUGHTER INTO EVIDENCE.
During the testimony of ten-year-old Jessica Pierson, daughter of the victim, the State offered into evidence a photograph of the victim and Jessica, which was approximately five (5) years old. Appellant objected on the grounds that the photograph (1) lacked probative value, (2) served only to generate sympathy for the victim and (3) the State failed to disclose the existence of the photograph prior to the day of its introduction at trial.
The photograph only came into the possession of the State at the trial, and it was then shown to the appellant's counsel. Full opportunity was given counsel to inspect and view the photograph. As to grounds (1) and (2), the trial judge has considerable discretion with regard to the relevancy and admissibility of such evidence and, unless he abuses his judicial discretion to the point where it prejudices the accused, this Court will not reverse his ruling. Shearer v. State, 423 So.2d 824 (Miss. 1982); Page v. State, 295 So.2d 279 (Miss. 1974).
As to point (3), appellant did not follow the procedure set forth in cases after Box v. State, 437 So.2d 19 (Miss. 1983), e.g., Shaw v. State, 521 So.2d 1278 (Miss. 1987); Nixon v. State, DP-65 (Miss. Nov. 25, 1987); Reuben v. State, 517 So.2d 1383 (Miss. 1987); Inman v. State, 515 So.2d 1150 (Miss. 1987); Griffin v. State, 504 So.2d 186 (Miss. 1987); Watts v. State, 492 So.2d 1281 (Miss. 1986); Hall v. State, 490 So.2d 858 (Miss. 1986); Gray v. State, 487 So.2d 1304 (Miss. 1986).
While the probative value of the photograph may be little or none, we are satisfied beyond reasonable doubt that the photograph could not, and did not, prejudice the appellant and, under Miss.Sup.Ct.Rule 11 was harmless.
The assigned error III is rejected.

*658 IV.

THE LOWER COURT ERRED IN REFUSING THE APPELLANT A PEREMPTORY INSTRUCTION UNDER THE WEATHERSBY RULE.
The appellant contends the court erred in refusing to grant him a peremptory instruction following the rule stated in Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933). That rule follows:
Where the defendant or the defendant's witnesses are the only witnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the State, or by the physical facts, or by the facts of common knowledge.
165 Miss. at 209, 147 So. at 482.
In Berry v. State, 455 So.2d 774, 776 (Miss. 1984), we said: "This Court has stated that it is a rare case that meets the requirements of Weathersby." In the case sub judice, the evidence introduced by the State conflicts with the version advanced by the appellant and removes the case from the Weathersby rule. We point specifically to the following items:
(1) The deceased's daughter testified that her mother was a good housekeeper and that their house was cleaned on May 24;
(2) Investigator Wright testified that the bed in the master bedroom did not appear to have been slept in;
(3) The police search of the Jackson residence failed to produce any hypodermic needles;
(4) The deceased's mother testified that, as recently as two weeks prior to May 24th, no bruises were evident on her daughter's body;
(5) The appellant testified that the deceased held the pistol in both hands; however, no lead residue was found on the deceased's hands;
(6) Lead residue was found on the deceased's right forearm;
(7) The appellant, although initially stating that the shooting occurred in the master bedroom doorway, later, at trial, testified that it occurred in the master bathroom; and
(8) The appellant testified that he never saw the deceased cock the hammer of the single action .22 caliber pistol.
Assigned error IV is rejected.
There being no reversible error in the trial below, the judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS, P.J., and ROBERTSON, PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., dissents without written opinion.